**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA**

ELDA JN BAPTISTE,

                Petitioner,

   v.

ANGELA HOOVER, et al.,

                Respondents.

CIVIL ACTION NO. 3:26-CV-00890

(MEHALCHICK, J.)

## MEMORANDUM

Petitioner, Elda JN Baptiste ("Baptiste"), a citizen of Haiti and asylum seeker, brings this petition for writ of habeas corpus. (Doc. 1). On April 13, 2026, Baptiste filed the instant petition, requesting that Respondents Angela Hoover, Brian McShane, Todd Lyons, Markwayne Mullin, Todd Blanche, and the Department of Homeland Security[1] release her from custody at the Clinton County Correctional Facility in McElhattan, Pennsylvania or provide her with an immediate bond hearing. (Doc. 1, at 14-15). On April 15, 2026, Hoover

---

[1] Pursuant to the "immediate custodian rule," the only proper respondent in this case is Angela Hoover ("Hoover"), Warden of the Clinton County Correctional Facility. "The federal habeas statute straightforwardly provides that the proper respondent to a habeas petition is 'the person who has custody over [the petitioner].'" *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) (quoting 28 U.S.C. § 2242); 28 U.S.C. § 2243 ("[t]he writ, or order to show cause shall be directed to the person having custody of the person detained"); *see Anariba v. Dir. Hudson Cnty. Corr. Ctr.*, 17 F.4th 434, 444 (3d Cir. 2021) ("if a § 2241 petitioner does not adhere to the immediate custodian rule, then the district court lacks jurisdiction to entertain the petition"). As Baptiste is detained at the Clinton County Correctional Facility, Hoover is the proper respondent. (Doc. 1, at 2); *see Rumsfeld*, 542 U.S. at 434. As such, Respondents Brian McShane, Todd Lyons, Markwayne Mullin, Todd Blanche, and the Department of Homeland Security are **DISMISSED**. However, the government will be bound by the Court's judgment because Hoover is acting as an agent of the federal government by detaining Baptiste on behalf of ICE. *See Madera v. Decker*, 18 Civ. 7314, 2018 WL 10602037, at *9-*10 (S.D.N.Y. Sep. 28, 2018) (finding the warden acts as an agent of the ICE regional director when ICE makes initial custody determinations including setting of a bond and review of conditions of release); *Santana-Rivas v. Warden of Clinton Cnty. Corr. Facility*, 3:25-cv-01896, 2025 WL 3522932, at *8 (M.D. Pa. Nov. 13, 2025), *adopted in part, rejected in part*, 2025 WL 3513152 (M.D. Pa. Dec. 8, 2025) (finding same).

filed a response to Baptiste's petition. (Doc. 3). For the following reasons, Baptiste's petition (Doc. 1) is **GRANTED**, and Hoover is **ORDERED** to release Baptiste from custody.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The following background is derived from Baptiste's petition, Hoover's response, and the exhibits thereto. (Doc. 1; Doc. 3). Baptiste is a citizen of Haiti, who has lived in the United States since May 2023. (Doc. 1, at 2). Baptiste first entered the United States on May 19, 2023 and was paroled into the country. (Doc. 1, at 8; Doc. 3, at 4). Baptiste submits that she was paroled into the United States through the former Cuba, Haiti, Nicaragua, and Venezuela ("CHNV") parole program. (Doc. 1, at 8). The government provides that immigration officials released Baptiste on humanitarian parole pursuant to 8 U.S.C. § 1182(d)(5)(A). (Doc. 3, at 4, 16). Baptiste's parole expired on May 17, 2025. (Doc. 3, at 4).

On May 4, 2025, immigration officials encountered Baptiste at her residence and took her into ICE custody after local authorities charged Baptiste with "aggravated assault—attempts to cause or cause bodily injury with deadly weapon, terroristic threats with intent to terrorize another, simple assault, harassment—subject other to physical contact." (Doc. 3, at 4; Doc. 3-2, at 3). On May 5, 2025, immigration officials issued Baptiste a notice to appear, charging her as an arriving alien not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document. (Doc. 1, at 8; Doc. 3-3, at 2). On September 17, 2025, an immigration judge denied Baptiste's asylum application and ordered Baptiste removed to Haiti. (Doc. 3, at 4). Baptiste appealed the immigration judge's decision, and the appeal is pending before the Board of Immigration Appeals. (Doc. 1, at 8; Doc. 3, at 4-5). Baptiste has been in immigration detention for approximately one year, and she is currently detained at the Clinton County Correctional Facility. (Doc. 1, at 3).

II.    LEGAL STANDARD

28 U.S.C. § 2241 governs district courts' power to grant the writ of habeas corpus. Under 28 U.S.C. § 2241(b), the writ of habeas corpus extends to petitioners "in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States." Claims where non-citizens challenge immigration enforcement-related detention "fall within the 'core' of the writ of habeas corpus and thus must be brought in habeas." *Trump v. J. G. G.*, 604 U.S. 670, 672 (2025) (quoting *Nance v. Ward*, 597 U.S. 159, 167 (2022)). "For 'core habeas petitions,' 'jurisdiction lies in only one district: the district of confinement.'" *J. G. G.*, 604 U.S. at 672. While reviewing a noncitizen's habeas petition, courts evaluate whether the government complied with regulatory, statutory, and constitutional protections for noncitizens. *See Martinez v. McAleenan*, 385 F. Supp. 3d 349 (S.D.N.Y. 2019) (finding ICE failed to comply with regulatory and constitutional notice requirements prior to detaining a non-citizen petitioner and granting the petitioner's habeas petition). A court may order a bond hearing or release if the Court determines that a noncitizen habeas petitioner is entitled to such relief under relevant constitutional or statutory protections. *See A.L. v. Oddo*, 761 F. Supp. 3d 822, 827 (W.D. Pa. 2025) (finding that a noncitizen habeas petitioner was entitled to a bond hearing under the due process clause of the Fifth Amendment); *see Cantu-Cortes v. O'Neill*, No. 25-cv-6338, 2025 WL 3171639, at *2 (E.D. Pa. Nov. 13, 2025) (finding a habeas petitioner was entitled to a bond hearing under relevant statutory protections); *see also Alexey Kashranov v. J.L. Jamison, et al.*, No. 2:25-CV-05555, 2025 WL 3188399 at *8 (E.D. Pa. Nov. 14, 2025) (finding that the appropriate remedy when the government detains a petitioner under an inapplicable statute, violating due process, is release from custody).

### III.   JURISDICTION

"[F]ederal courts 'have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.'" *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 267 (3d Cir. 2016) (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006)). 28 U.S.C. § 2241 empowers federal courts to grant writs of habeas corpus where a petitioner is "in custody under or by color of the authority of the United States . . . in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(1), (3). Recently, in *Khalil v. President, United States*, 164 F.4th 259, 273 (3d Cir. 2026), the Third Circuit determined that the Immigration and Nationality Act ("INA") strips district courts of subject-matter jurisdiction to hear claims arising from removal actions or proceedings, when the claims could be addressed on a petition for review of a final order of removal ("PFR"). However, the Third Circuit clarified that district courts retain jurisdiction over habeas petitions presenting "now or never" questions of law, that cannot be meaningfully reviewed later on a PFR. *Kahlil*, 164 F.4th at 273-74.

Habeas actions based on whether a petitioner is detained pursuant to the appropriate statute, 8 U.S.C. § 1225(b) or 8 U.S.C. § 1226(a), and is entitled to a bond hearing are "now or never" legal questions that remain in the jurisdiction of district courts. *See Kahlil*, 164 F.4th at 274-77; *see also Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (finding 8 U.S.C. § 1252(b)(9) does not present a jurisdictional bar to challenges unrelated to review of an order of removal, the government's decision to detain in the first place, and the process by which removability will be determined). A determination of whether § 1225(b) or § 1226(a) applies to a petitioner also determines whether that petitioner is entitled to a bond hearing. *See Matter of Yajure Baptiste*, 29 I. & N. Dec. 126 (BIA 2025) (holding immigration judges lack authority to hear

4

bond requests for noncitizens detained under § 1225(b)); *see Kashranov*, 2025 WL 3188399 at *5 (citing § 1226(a)) (finding § 1226(a) allows for detainees to be released on conditional parole or bond). Such claims do not arise from removal proceedings, they arise "now." If left to be raised on a PFR, the petitioner will never get the opportunity for an immigration judge to determine their eligibility for bond during removal proceedings. *See Kahlil*, 164 F.4th at 274-77 ("when [noncitizens] raise claims that courts cannot 'meaningfully' review through the PFR process, those claims do not 'aris[e] from' the 'action[s] taken' or 'proceeding[s] brought' to remove them"). Thus, the Court retains jurisdiction over Baptiste's habeas petition because the legal questions of whether § 1225(b) or § 1226(a) applies to Baptiste and whether Baptiste is entitled to a bond hearing are wholly collateral to her removal proceedings and cannot be meaningfully reviewed on a PFR. *Jennings*, 583 U.S. at 294; *Kahlil*, 164 F.4th at 274-79.

**IV.    DISCUSSION**

Baptiste contends that her prolonged mandatory detention is in violation of the Due Process Clause of the Fifth Amendment, the INA, agency bond regulations, and the Administrative Procedure Act. (Doc. 1, at 9-14). Baptiste avers that she is entitled to release or an individualized bond determination pursuant to 8 U.S.C. § 1226(a). (Doc. 1, at 9-14). Hoover counters that Baptiste is properly detained without an opportunity for bond under 8 U.S.C. § 1225(b)(2)(A) because she is present in the United States without having been lawfully admitted. (Doc. 3, at 15-16). Hoover also contends that Baptiste's detention under 8 U.S.C. § 1225(b)(2)(A) does not violate the Due Process Clause of the Fifth Amendment because Baptiste, a noncitizen without admission, is limited to the due process rights provided by the INA. (Doc. 3, at 22). The Court will first address whether Baptiste was properly

detained under § 1225(b). The Court will then address whether Baptiste's detention violates due process.[2]

    A.  HOOVER IMPROPERLY DETAINED BAPTISTE UNDER 8 U.S.C. 1225(B)(2)(A).

Hoover improperly detained Baptiste under 8 U.S.C. § 1225(b)(2)(A), when Hoover should have detained Baptiste under 8 U.S.C. § 1226(a). Baptiste avers that noncitizens who previously entered and resided in the United States before ICE apprehended them are subject to detention under § 1226(a) and entitled to a bond hearing. (Doc. 1, at 11). Hoover counters that Baptiste is properly detained under § 1225(b)(2)(A), which mandates the detention of noncitizens who are present in the United States without lawful admission. (Doc. 3, at 17-18).

The INA is a comprehensive statute regulating immigration, which Congress has repeatedly reworked since its enactment in 1952. *Kashranov*, 2025 WL 3188399, at *1. Before 1996, the INA provided that noncitizens who presented themselves at ports of entry were subject to mandatory detention during exclusion proceedings, while noncitizens who evaded inspection by entering elsewhere were afforded the opportunity to obtain release during deportation proceedings. *Matter of Yajure Baptiste*, 29 I. & N. Dec. 216, 222-223 (BIA 2025) (citing 8 U.S.C. §§ 1225(a); 1251 (1994)). In 1996, the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") amended the INA to include § 1225 and § 1226, in

---

[2] The Court notes that Baptiste also claims relief under immigration bond regulations and the Administrative Procedure Act. (Doc. 1, at 12-14). As the Court grants the Petition on the basis that Baptiste's detention is unlawful under the INA and violates her due process rights, the Court declines to consider Baptiste's bond regulation and APA arguments at this time. *See Bethancourt Soto v. Soto*, No. 25-cv-16200, 2025 WL 2976572, at *9 n. 6 (D.N.J. Oct. 22, 2025); *see Demirel v. Fed. Det. Ctr. Phila.*, No. 25-5488, 2025 WL 3218243, at *5 (E.D. Pa. Nov. 18, 2025); *see Kashranov*, 2025 WL 3188399, at *8; *see also Ramirez v. Jamison*, No. 2:25-cv-7346, 2026 WL 196474, at *19 (E.D. Pa. Jan. 26, 2026).

part, to end the preferential treatment of noncitizens who evaded inspection when entering the United States. OMNIBUS CONSOLIDATED APPROPRIATIONS ACT, 1997, PL 104–208, September 30, 1996, 110 Stat 3009; H.R. Rep. No. 104-469, at 225 (1996); *see Baptiste*, 29 I. & N. Dec. at 223. With the IIRIRA, Congress eliminated separate exclusion and deportation hearings and combined them into a single removal proceeding, regardless of where the noncitizen entered the United States. 8 U.S.C. § 1229a. Since 1996, only noncitizens who are admitted are subject to deportation, while noncitizens who have never been formally admitted are deemed inadmissible. 8 U.S.C. § 1182(a).

Pursuant to section 1225(b)(1) of the IIRIRA, when a noncitizen enters the United States at a designated port of entry, they are considered an "arriving alien" and are generally subject to expedited removal, unless they indicate an intention to apply for asylum. If the asylum officer finds a noncitizen's asserted fear of persecution to be credible, the noncitizen's asylum claim will be fully considered in a standard removal hearing. 8 C.F.R. § 208.30(f); 8 U.S.C. § 1225(b)(1)(B)(ii). Noncitizens are subject to detention while an immigration judge considers their asylum application; however, the Department of Homeland Security may grant such noncitizens parole into the United States for humanitarian purposes. 8 U.S.C. § 1225(b)(1)(B)(ii); 8 U.S.C. § 1182(d)(5). Pursuant to 8 C.F.R. § 212.5(e), humanitarian parole issued under 8 U.S.C. § 1182(d)(5) terminates without written notice at the time it expires, upon the noncitizen's departure from the United States, with written notice "upon accomplishment of the purpose for which parole was authorized," or with written notice when, in the opinion of DHS officials, neither humanitarian reasons nor public benefit warrants the continued presence of the noncitizen in the United States. When humanitarian

parole under 8 U.S.C. § 1182(d)(5) terminates, the noncitizen "shall be restored to the status the he or she had at the time of parole." 8 C.F.R. § 212.5(e)(2)(i).

Section 1225(b)(2)(A) of the INA is a catchall provision, that applies to applicants for admission not otherwise covered by § 1225(b)(1). *Jennings*, 583 U.S. at 287. Section 1225(b)(2)(A) of the INA provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained [pending removal hearings]." Pursuant to this provision, noncitizens are subject to mandatory detention while their removal proceedings are pending, but they may be released "for urgent humanitarian reasons or significant public benefit." *Jennings*, 583 U.S. at 288 (citing § 1182(d)(5)(A)); *Kashranov*, 2025 WL 3188399, at *1. To trigger § 1225(b)(2)(A), an examining immigration officer must determine that an individual is (1) an applicant for admission, (2) seeking admission, and (3) not clearly and beyond a doubt entitled to be admitted. *Martinez v. Hyde*, 792 F. Supp. 3d, 211, 214 (D. Mass. July 24, 2025), *Kashranov,* 2025 WL 3188399, at *6. Section 1225(b)(2)(A) applies only to a noncitizen who is both an "applicant for admission" and "seeking admission." *Kashranov*, 2025 WL 3188399, at *6; *Soto v. Soto*, 807 F. Supp. 3d 397, 408 (D.N.J. 2025) (collecting cases).

The INA defines an applicant for admission as a noncitizen who is "present in the United States who has not been admitted or who arrives in the United States." § 1225(a)(1); *Jennings*, 583 U.S. at 286. The phrase "alien seeking admission" is not defined in § 1225, so the Court must construe the phrase based upon its ordinary meaning and statutory context. *See Kashranov*, 2025 WL 3188399, at *6; *see also J.A.M. v. Streeval*, No. 4:25-cv-34 2 (DCL), 2025 WL 3050094, at *5 (M.D. Ga. Nov. 1, 2025). District courts in the Third Circuit and

across the country have found that "seeking admission" describes active and ongoing conduct, such as physically attempting to come into the United States at a border or port of entry. *Kashranov*, 2025 WL 3188399, at *6; *Del Cid v. Bondi*, No 3:25-cv-00304, 2025 WL 2985150, at *16 n. 7 (W.D. Pa. Oct. 23, 2025); *J.A.M.*, 2025 WL 3050094, at *3; *Ochoa Ochoa v. Noem*, No. 25 CV 10865, 2025 WL 2938779, at *6 (N.D. Ill. Oct. 16, 2025); *see Cantu-Cortes*, 2025 WL 3171639, at *2 (quoting *Vazquez v. Feeley*, No. 25-cv-01542, 2025 WL2676082, at *13 (D. Nev. Sept. 17, 2025)) (finding a noncitizen who has already been residing in the United States cannot be characterized as "seeking entry" consistent with the ordinary meaning of that phrase). This reading comports with the Supreme Court's finding in *Jennings v. Rodriguez*, 583, U.S. 281, 285 (2018), that § 1225(b) "applies primarily to aliens seeking entry into the United States," those who are "seeking admission into the country." *See Soto*, 807 F. Supp. 3d at 407. This reading also preserves a distinction between "seeking admission" and the separate term "applicant for admission," ensuring that each phrase carries independent meaning.[3] *Kashranov*, 2025 WL 3188399, at *6.

Section 1226 of the INA applies to noncitizens who are not seeking admission but are already present in the United States. *Jennings*, 583 U.S. at 288-89. Section 1226(a) provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." The Attorney General may release a noncitizen on bond or conditional parole. 8 U.S.C. § 1226(a)(2). Pursuant to § 1226(a), "[i]mmigration authorities make an initial custody

---

[3] The Court acknowledges that the Fifth Circuit and Eighth Circuit recently issued decisions in *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 503 (5th Cir. 2026) and *Avila v. Bondi*, 170 F.4th 1128, 1138 (8th Cir. 2026) respectively, both holding that under the INA an "applicant for admission" is necessarily someone who is "seeking admission." However, *Buenrostro-Mendez* and *Avila* are not binding on the Court.

9

determination, after which the noncitizen may request a bond hearing before an immigration judge." *Kashranov*, 2025 WL 3188399, at *1 (citing 8 C.F.R. § 1236.1(c)(8), (d)(1)). At their bond hearing, a noncitizen "may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community." *Nielsen v. Preap*, 586 U.S. 392, 397-98 (2019); *see Kashranov*, 2025 WL 3188399, at *1.

On July 8, 2025, ICE and the Department of Justice announced a new practice, in which all applicants for admission, regardless of when the noncitizens were apprehended, are now subject to the mandatory detention provision of § 1225(b)(2)(A). Interim Guidance Regarding Detention Authority for Applicants for Admission, https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission (last visited May 11, 2026). On September 5, 2025, the BIA adopted the DOJs new position, holding that immigration judges have no authority to consider bond requests for any person who entered the United States without admission, finding all applicants for admission are subject to detention under § 1225(b)(2)(A) and are ineligible for release on bond. *Matter of Yajure Baptiste*, 29 I. &N. Dec. 216 (BIA 2025). Several district courts across the country, including courts in the Third Circuit, reject this new policy and the application of § 1225(b)(2)(A) to noncitizens who have been residing in the United States for a period of time before they are detained by ICE pending removal proceedings. *Cantu-Cortes*, 2025 WL 3171639, at *2 (finding that § 1226(a), not § 1225(b)(2)(A), is applicable to a petitioner who resided in the United States for approximately 25 years before ICE detained him); *Kashranov*, 2025 WL 3188399, at *1 (finding "mandatory detention only applies for aliens who are "seeking admission," and petitioner who lived in the United States for almost two years was not seeking admission but was "already here"); *Del Cid v. Bondi*,

2025 WL 2985150 at *14-17 (finding noncitizens who had been in the United States for over two years when arrested are subject to § 1226(a) not § 1225); *Soto,* 807 F. Supp. 3d at 408 (collecting cases).

Section 1226(a), not § 1225(b)(1) or § 1225(b)(2)(A), applies to Baptiste's detention. While Baptiste was paroled into the United States, Baptiste was taken into ICE custody before her parole expired without written notice from the government that her parole terminated. (Doc. 1, at 2, 8; Doc. 3, at 4). As the government did not terminate Baptiste's humanitarian parole in accordance with the written notice requirements of 8 C.F.R. § 212.5(e), Baptiste cannot be restored to custody under § 1225(b)(1). Further, there is no evidence in the record that Baptiste was in custody under § 1225(b)(1) when she was paroled into the United States. (*See* Doc. 3-2). Baptiste cannot be restored to custody under § 1225(b)(1), if she was not detained under § 1225(b)(1) when immigration officials granted her parole into the United States. 8 C.F.R. § 212.5(e)(2)(i).

Section 1225(b)(2)(A) also does not apply to Baptiste's detention because Baptiste is not seeking admission into the United States. Section 1225(b)(2)(A) applies to noncitizens who are applicants for admission *and* are seeking admission to the United States. *See Martinez,* 792 F. Supp. 3d at 214, *see Kashranov,* 2025 WL 3188399, at *6; *see also* 807 F. Supp. 3d 397, at 400, 408 (collecting cases). Baptiste is not actively attempting to come into the United States; Baptiste has lived in the United States since May 2023. (Doc. 1, at 2; Doc. 3, at 4). Based on the plain meaning of the phrase "seeking admission," Baptiste sought admission when she entered the United States on May 19, 2023. (Doc. 1, at 2); *see Kashranov,* 2025 WL 3188399, at *6 ("seeking admission describes active and ongoing conduct—physically

11

attempting to come into the United States, typically at a border or port of entry and presenting oneself for inspection and authorization").

Instead, § 1226(a) applies to applicants for admission, like Baptiste, who are not actively seeking admission but who have been residing in the United States for an extended period. *See Kashranov,* 2025 WL 3188399, at *1 (finding "mandatory detention only applies for aliens who are "seeking admission," and petitioner who lived in the United States for almost two years was not seeking admission but "already here"); *see also Soto,* 807 F. Supp. 3d at 400, 408 (collecting cases). DHS records also indicate that on May 4, 2025, Baptiste was arrested and detained pursuant to a warrant in accordance with the procedures of § 1226(a). (Doc. 3-2, at 2) ("Disposition: Warrant of Arrest/Notice to Appear"); *compare* 8 U.S.C. § 1226 ("On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States."), *with* 8 U.S.C. § 1225 (containing no provisions on apprehending noncitizens via warrant). Accordingly, after her May 4 arrest, Hoover improperly detained Baptiste under § 1225(b), when she should have detained Baptiste under § 1226(a).

B. HOOVER VIOLATED BAPTISTE'S DUE PROCESS RIGHTS BY IMPROPERLY SUBJECTING BAPTISTE TO MANDATORY DETENTION.

Hoover's continued mandatory detention of Baptiste under § 1225(b)(2)(A) violates Baptiste's procedural due process rights. Baptiste avers that civil detention without opportunity for an individualized custody determination violates the due process protections guaranteed by the Fifth Amendment. (Doc. 1, at 9-11). Hoover counters that the detention of noncitizens during removal proceedings is constitutional. (Doc. 3, at 43-44).

The Fifth Amendment provides that no person shall "be deprived of life, liberty, or property without due process of law." U.S. Const. amend. V. The Due Process Clause of the

Fifth Amendment "applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). To determine whether a government action violates due process, courts apply the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976). The *Mathews* balancing test weighs: (1) the private interest implicated by the government action; (2) the risk of an erroneous deprivation and the probable value of additional safeguards; and (3) the government's interest, including administrative burdens of additional procedures. *Mathews*, 424 U.S. at 334.

The first factor, private interest implicated by the government action, weighs heavily in Baptiste's favor because Hoover has deprived Baptiste of his physical liberty with a year of improper detention without the possibility of bond under § 1225(b)(2)(A). (Doc. 1, at 2; Doc. 3, at 4); *Hamdi v. Rumsfield*, 542 U.S. 507, 529 (2004) ("[T]he most elemental of liberty interests [is] the interest in being free from physical detention by [the] government."); *Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment-from government custody, detention, or forms, of physical restraint-lies at the heart of the liberty [the Due Process Clause] protects); *Soto*, 807 F. Supp. 3d at 409. The second factor, risk of erroneous deprivation and probable value of additional safeguards, also weighs heavily in Baptiste's favor because Baptiste remains erroneously detained without the possibility of release on bond pursuant to § 1225(b)(2)(A). *See Soto*, 807 F. Supp. 3d at 409 (citing *Barrios v. Shepley*, No. 1:25-cv-00406-JAW, 2025 WL 2772579, at *11 (D. Me. Sept. 29, 2025); *Zumba v. Bondi*, No. 25-cv-14626, 2025 WL 2753496, at *10 (D.N.J. Sept. 26, 2025)) (finding the second *Mathews* factor weighs in petitioner's favor when subject to erroneous detention without a showing from the government that petitioner presented a public safety or flight risk); *see also Kashranov*,

13

2025 WL 3188399, at *5 (finding the lack of any individualized assessment creates a high risk of error). The third *Mathews* factor, the government's interest, also weighs in Baptiste's favor. Generally, the government's interest in detaining noncitizens is to ensure the appearance of noncitizens at future immigration proceedings and to prevent danger to the community. *Zadvydas*, 533 U.S. at 690; *Soto*, 807 F. Supp. 3d at 409-10. Here, Baptiste poses no such risk to the government's interest in detaining him. Hoover does not allege that Baptiste poses a flight risk or danger to the community. (Doc. 1, at 10; *see* Doc. 3). Further, Baptiste has demonstrated compliance with the immigration process by following the requirements of her parole. (Doc. 1, at 3, 8, 10). As each *Mathews* factor weighs in Baptiste's favor, Hoover's mandatory detention of Baptiste under § 1225(b)(2)(A) violates Baptiste's procedural due process rights. Accordingly, Baptiste's petition for writ of habeas corpus is **GRANTED**, and Hoover is **ORDERED** to release Baptiste from custody.[4]

## V.   CONCLUSION

For the foregoing reasons, Baptiste's petition for writ of habeas corpus is **GRANTED**. (Doc. 1). Hoover is **ORDERED** to release Baptiste from custody. Baptiste may move to

---

[4] The Court notes that Baptiste also seeks relief in the form of attorney's fees and costs. (Doc. 1, at 15). The Court cannot award attorney's fees without first assessing affidavits and other evidence regarding the reasonableness of the fees sought. *See Toshiba Am. Med. Sys., Inc. v. Valley Open MRI & Diagnostic Ctr. Inc.*, 674 F. App'x 130, 133 (3d Cir. 2016) (nonprecedential) (noting that the party seeking attorney's fees bears "the burden of producing evidence as to the reasonableness of the fees" and reversing a district court's grant of a request for fees based "solely [on] a declaration stating the amount claimed"); *see also Ohm Sys., Inc. v. Senergene Sols., LLC*, No. CV 23-1340, 2025 WL 2772612, at *2 (D.N.J. Sept. 29, 2025) (noting that a court cannot assess a request for attorney's fees without sufficient evidence regarding the reasonableness of the fees sought). Accordingly, Baptiste must request attorney's fees in a separate motion with accompanying exhibits.

reopen this matter if Hoover seeks to detain her under § 1226(a) and fails to schedule a timely bond hearing. The Clerk of Court is directed to close this matter.

An appropriate Order follows.

BY THE COURT:

Dated: May 12, 2026

*/s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States District Judge**

15